**DICKINSON WRIGHT PLLC**
ERIC D. HONE (ISB No. 5699)
Nevada Bar No. 8499 (Admitted *Pro Hac Vice*)
Email: ehone@dickinsonwright.com
GABRIEL A. BLUMBERG
Nevada Bar No.12332 (Admitted *Pro Hac Vice*)
Email: gblumberg@dickinsonwright.com
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113
Telephone: 702-550-4400
Facsimile: 844-670-6009

**RUCHTI & BECK LAW OFFICES**
JAMES D. RUCHTI (ISB No. 6366)
Email: james@idaholaw.us
Oakley Building
1950 E. Clark Street, Suite 200
Pocatello, Idaho 83201
Telephone: 208-478-5100
Facsimile: 208 232-5100

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NELSON-RICKS CHEESE COMPANY, INC., an Idaho corporation,<br><br>    Plaintiff,<br><br>v.<br><br>LAKEVIEW CHEESE COMPANY, LLC, a Nevada limited liability company,<br><br>    Defendant. | Case No.  4:16-cv-00427-DCN<br><br>**DEFENDANT LAKEVIEW CHEESE COMPANY, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

Defendant Lakeview Cheese Company, LLC ("Lakeview"), by and through its counsel of

record, the law firms of Dickinson Wright PLLC and Ruchti & Beck, hereby submits the

following Memorandum of Points and Authorities in support of its Motion for Summary

Judgment.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.   INTRODUCTION

This matter has its genesis in the sale of assets from the now defunct Nelson-Ricks Creamery Company ("Creamery). Among other assets, Creamery owned facilities in Salt Lake City, Utah, and Rexburg, Idaho. Creamery also owned certain intellectual property including both the "Banquet" and "Nelson Ricks Creamery" brand names.

In 2012, Lakeview purchased both the Salt Lake City facility and the "Banquet" brand from Creamery. The sale included the transfer of Creamery's www.banquetcheese.com website to Lakeview. The sale also included a limited license allowing Lakeview to make use of the Nelson Ricks Creamery brand name. In 2014, Creamery sold the Rexburg facility and the "Nelson Ricks Creamery" brand to NRCC Asset Acquisition LLC, an affiliate of Plaintiff Nelson-Ricks Cheese Company.

Plaintiff's claims in this matter center on the "About Us" webpage from Creamery's original www.banquetcheese.com website. The "About Us" webpage detailed Creamery's history and the historical affiliation of Nelson Ricks Creamery and Banquet. In 2014, contemporaneously with Creamery's sale to NRCC Asset Acquisition, two key events took place. First, Creamery terminated Lakeview's limited license agreement to use the "Nelson Ricks Creamery" name. Second, Lakeview updated Creamery's original website to remove the "About Us" webpage, making it no longer accessible via www.banquetcheese.com.

More than one year later, in April 2015, Plaintiff obtained trademark registration for "Nelson-Ricks Creamery Company." One year after that, Plaintiff became aware that, if manually typed into a web-browser, it could access the defunct "About Us" page, still in the same form as when created by Creamery. This lawsuit ensued even after Lakeview immediately

2

complied with Plaintiff's demand that the still unlinked and defunct "About Us" page be altered to remove any reference to "Nelson Ricks Creamery."

Plaintiff's claims fail both on the undisputed facts and on the law. Plaintiff's trademark claims fail because: (i) Plaintiff did not own the subject mark at any time when Lakeview made use of the Nelson Ricks Creamery name; (i) Lakeview did not use the Nelson Ricks Creamery mark in commerce; (iii) there is no evidence of consumer confusion; (iv) use of the name on the defunct webpage was fair use as it simply reiterated Creamery's history; and (v) Plaintiff cannot establish damages. Plaintiff's remaining claims fail for similar reasons.

## B.    LEGAL ARGUMENT

### 1.    Legal Standard

"One of the principal purposes of the summary judgment rule 'is to isolate and dispose of factually unsupported claims . . . .'" *Hurst v. IHC Health Services, Inc.*, 817 F. Supp. 2d 1202, 1204 (D. Idaho 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). "It is 'not a disfavored procedural shortcut,' but is instead the 'principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources.'" *Id.* (quoting *Celotex*, 477 U.S. at 327). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 1204–05 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

"The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings." *Id.* at 1205 (citing *Anderson*, 477 U.S. at 255). "On the other hand, the Court is not required to adopt unreasonable inferences from

3

circumstantial evidence." *Id.* (citing *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988)).

Additionally, mere conclusory statements without factual support are insufficient to defeat a

motion for summary judgment.[1] *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1103 (9th

Cir. 2008).

"The moving party bears the initial burden of demonstrating the absence of a genuine

issue of material fact." *Id.* (citing *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en

banc)). "To carry this burden, the moving party need not introduce any affirmative evidence

(such as affidavits or deposition excerpts) but may simply point out the absence of evidence to

support the nonmoving party's case." *Id.* (citing *Fairbank v. Wunderman Cato Johnson*, 212

F.3d 528, 532 (9th Cir. 2000)).

### 2.    Plaintiff Cannot Prevail on Its First Cause of Action for Trademark Infringement under Section 43(a)(1)(A) of the Lanham Act

The Lanham Act provides a comprehensive framework for regulating the use of

trademarks and protecting them against infringement, dilution, and unfair competition.  15

U.S.C. § 1051 *et seq*.  In bringing a claim for trademark infringement, the plaintiff must

establish, by a preponderance of the evidence, that: (1) it is the owner of a valid and protectable

trademark; (2) the defendant used the mark in commerce; (3) the defendant's use of the mark is

likely to cause confusion; and (4) the defendant has suffered damages.  15 U.S.C. § 1125(a);

*Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1081 (9th Cir. 2015) (citing *Fortune Dynamic,*

*Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010)).

---

[1] Although summary judgment is generally disfavored in cases of trademark infringement due to the inherent factual nature of such claims, this case is one in which summary judgment is appropriate because Plaintiff has no evidence to support any of its conclusory and unsubstantiated factual assertions. *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1356 n.5 (9th Cir. 1985).

Commercial use of the mark is a jurisdictional predicate. *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005). If the mark has not been used in commerce, the plaintiff's claim for trademark infringement fails as a matter of law. *Id.* If commercial use is established, then the core element of the trademark infringement claim becomes the likelihood of confusion, *i.e.* whether the similarity of the marks is likely to confuse customers about the source of the products. *Brookfield Commc'ns v. West Coast Entm't Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999) (quotation marks omitted).

Here, Plaintiff cannot satisfy any of the four requirements for a plausible trademark infringement claim and thus summary judgment in appropriate.

### a) Plaintiff Did Not Hold a Valid and Protectable Trademark at the Time of the Alleged Use

The timeline giving rise to this action clearly demonstrates that Plaintiff did not apply for or register the Mark until well after Lakeview had removed the Defunct Page from the Website. Lakeview purchased the Salt Lake City Facility and certain intellectual property (including the Website containing the Defunct Webpage) on November 29, 2012.[2] That same day, Lakeview and Creamery entered into a Limited License Agreement whereby Lakeview was permitted to use the name Nelson-Ricks Creamery Company "in connection with [Lakeview's] use, sale and exhaustion of the purchased inventory."[3] This Limited License Agreement remained in effect until April 9, 2014, when Creamery revoked the Creamery Limited License Agreement with Lakeview "[i]n view of a contemplated sale of the remaining assets of Nelson-Ricks Creamery."[4]

_____

[2] *See* Exhibit 1-D.

[3] *See* Exhibit 1-E.

[4] *See* Exhibit 1-J.

Lakeview disconnected the Defunct Webpage contemporaneously with the termination of the Limited License Agreement.[5] Approximately four months later, on August 11, 2014, Plaintiff filed its application to register the Mark with the USPTO.[6] On April 21, 2015, Plaintiff registered the Mark with the USPTO.[7]

Based on these dates, it is clear that Lakeview removed the Defunct Webpage from the Website prior to Plaintiff applying for the Mark and more than one year prior to Plaintiff possessing a registered trademark. As ownership of a valid and protectable trademark is the first essential element in bringing a claim for trademark infringement, Plaintiff's claims for trademark infringement must fail.

### b)    Plaintiff Cannot Show That the Mark Was Used in Commerce

Plaintiff's trademark claim also fails because Lakeview did not use the Mark in commerce. A person may only be held liable for trademark infringement if it uses the Mark in commerce. 15 U.S.C. §§ 1114, 1125; *see also Bosley*, 403 F.3d at 676-77 ("The Supreme Court has made it clear that trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential customers.").

In considering the commercial use requirement, the Ninth Circuit has expressly held that websites bearing another's trademark that do not offer any product for sale, or contain paid advertisements from any other commercial entity, are non-infringing under Section 43(a)(1)(A)

---

[5] *See* Statement of Facts ¶ 15.

[6] *See* Exhibit 1-L.

[7] *See id.*

of the Lanham Act because they do not satisfy the commercial use requirement. *See Bosley.* 403 F.3d at 678 (citing *TMI, Inc. v. Maxwell*, 368 F.3d 433, 435, 438 (5th Cir.2004)).

Here, Plaintiff alleges Lakeview infringed upon the Mark based upon the presence of the Mark on the Defunct Webpage.[8]  Lakeview's Website and the Defunct Webpage, however, did not use the Mark in connection with a sale of goods or services as required to maintain a claim for trademark infringement. *See Bosley*, 403 F.3d at 677.

At the time Lakeview acquired the Banquet brand, the Website contained an online store through which wholesalers could purchase Banquet products.[9]  By early 2014, however, Lakeview altered the Website to remove the online store and disconnect the link to the "About Us" page.[10]  Thus, prior to Plaintiff even applying for the rights to the Mark and well before its subsequent registration of the Nelson Ricks Mark, Lakeview had completely removed the ability to purchase products from the Website.  Furthermore, at no time after Lakeview acquired the Website did it contain any paid advertisements from any other commercial entity.[11]

Therefore, pursuant to the Ninth Circuit's clearly established precedent, Plaintiff's claim for trademark infringement fails as a matter of law because Lakeview's use of the Mark on the Defunct Webpage was not used in commerce as required by Section 43(a)(1)(A) of the Lanham Act.

---

[8]  Docket No. 44, ¶16.

[9] *See* Statement of Facts ¶ 7.

[10] *See* Statement of Facts ¶ 15.

[11] Statement of Facts ¶¶ 7, 15.

c)   **Plaintiff Cannot Prove Lakeview's Use of the Mark Was Likely to Confuse Any Consumer**

Plaintiff's trademark claim also fails because Plaintiff cannot present any evidence to support a finding that Lakeview's use of the Mark resulted in a likelihood of confusion.

The likelihood of confusion is the fundamental test in considering a claim of trademark infringement. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992) ("It is, of course, also undisputed that liability under § 43(a) requires proof of the likelihood of confusion."). To establish a likelihood of confusion, Plaintiff must establish that confusion is *probable* rather than merely *possible*. *HMH Pub. Co. v. Brincat*, 504 F.2d 713, 717 (9th Cir. 1974) (emphasis added).

The Court should consider the *Sleekcraft* factors when assessing the likelihood of consumer confusion. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)). The *Sleekcraft* "analysis is pliant, illustrative rather than exhaustive, and best understood as simply providing helpful guideposts." *Id.* In applying the *Sleekcraft* factors, the court is to consider: (1) the similarity of the marks; (2) the relatedness of the two companies' services; (3) the marketing channel used; (4) the strength of Plaintiff's mark; (5) the defendant's intent in selecting its mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers.[12] *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). "The *Sleekcraft* factors are to be applied flexibly, knowing that 'not all of the factors are of equal importance or applicable in

---

[12] In this case, Lakeview does not contest the first three *Sleekcraft* factors because the use in question involved the actual Mark and the parties are both wholesale distributors of cheese. Additionally, Lakeview does not address the likelihood of expansion factor because it "is relatively unimportant where two companies already compete to a significant extent." *Brookfield*, 174 F.3d at 1060.

every case.'" *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 934 (9th Cir. 2017) (quoting

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608 (9th Cir. 2005)).

In this case, the most important and applicable *Sleekcraft* factors are (1) Lakeview's lack

of intent; (2) the lack of any evidence of actual confusion; and (3) the high degree of care likely

to be exercised by purchasers. *See Fortune Dynamic, Inc.*, 618 F.3d at 1030.

### (1)    Lakeview Did Not Intend to Use the Mark

A defendant's intent to deceive is strong evidence of a likelihood of confusion.

*Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002).  Here, as evidenced by

Lakeview's affirmative actions to avoid infringement, it is clear Lakeview had no intent to

confuse or deceive consumers.

Lakeview acquired the Banquet brand, the associated intellectual property, and the

Website on November 29, 2012.[13]  After acquiring the Website, Lakeview removed the link to

the Defunct Webpage containing the Mark from the Website in an effort to remove the reference

to the Mark from the internet completely.[14]

Lakeview's lack of intent to confuse or deceive consumers is further evidenced by its

prompt removal of the reference to the Mark from the Defunct Page upon receipt of Plaintiff's

letter regarding the same.[15]  Thus, based on Lakeview's continued efforts to clean the Website of

any reference to the Mark, it is apparent that Lakeview had no intent to confuse or deceive

consumers and therefore this factor weighs against a finding of likelihood of confusion.

---

[13] *See* Exhibit 1-D.

[14] Statement of Facts ¶ 15.

[15] *See* Exhibit 1-N.

9

### (2)    Plaintiff Has No Evidence of Actual Confusion

Plaintiff alleges Defendant's use of the Mark on the Defunct Webpage has already led to consumer confusion.[16] "Evidence of actual confusion is strong evidence that future confusion is likely." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1393 (9th Cir. 1993). However, an unsubstantiated conclusory allegation is insufficient to demonstrate actual confusion. *See Surrell, 518 F.3d at 1103.* In fact, the party claiming actual confusion must present evidence of an ***appreciable*** number of consumers actually confused by the defendant's use. *See Entrepreneur Media, Inc.*, 279 F.3d at 1151 (emphasis added); *see also Surrell*, 518 F.3d at 1103.

Here, Plaintiff cannot meet its burden of providing admissible evidence of an appreciable number of confused consumers. When asked about consumer confusion related to Lakeview's use of the Mark, Plaintiff's president Michael Greenberg was unable to identify any customers with specificity who claimed they were confused by the Defunct Webpage.[17] Indeed, the following two exchanges sum up Plaintiff's lack of evidence regarding consumer confusion:

> Q. Okay. Tell me every client who's told you they saw that web page and were misled.
>
> A. I can't name them.[18]
>
> Q . . . But I want to know every person who told you they had seen the Banquetcheese.com/about website and were confused as to who owned or didn't own Nelson-Ricks Creamery.
>
> A. I don't remember.
>
> Q. Do you remember any single person?

---

[16]  Docket No. 44 ¶ 29.

[17]  *See* Exhibit 1-C at 55:5-25.

[18]  *Id.* at 58:18-20.

A. I don't remember.[19]

Throughout the course of discovery, Plaintiff has been unable to produce even a single instance of actual confusion based on the Defunct Webpage and the reference to the Nelson Ricks Mark contained therein.

As Plaintiff cannot establish even a single instance of actual confusion, let alone any appreciable number of confused consumers, this factor weighs against any finding of a likelihood of confusion required to prevail on a trademark infringement claim.

### (3) Both Parties' Customers are Sophisticated Wholesalers Who Exercise a High Degree of Care

Consumer confusion has been referred to by the Ninth Circuit as the "linchpin" of trademark infringement. *See Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012) (citing *Entrepreneur*, 279 F.3d at 1154). The Court should determine the likelihood of confusion based on a "reasonably prudent consumer." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). "What is expected of this reasonably prudent consumer depends on the circumstances." *Brookfield*, 174 F.3d at 1060. A purchaser is expected to be more discerning and less easily confused when purchasing expensive goods. *Id.* (citing *Official Airline Guides*, 6 F.3d at 1393). Similarly, it is generally agreed that confusion is unlikely among professionals or sophisticated buyers who are more likely to take the time and effort to find the specific product they want. *Brookfield*, 174 F.3d at 1060; *see also Cont'l Plastic Containers v. Owens Brockway Plastic Prod., Inc.*, 141 F.3d 1073, 1080 (Fed. Cir. 1998) (finding wholesale purchasers of empty plastic bottles to be sophisticated consumers who are unlikely to be confused as to a products origin because sales to such consumers are "likely to be

---

[19] *Id.* at 59:18-24.

11

the culmination of long-term negotiations, direct communications between the parties, and ongoing contact.").

In considering the relevant consumer base in this case, the undisputed facts reveal that Plaintiff and Lakeview have an exclusive customer base of professional purchasers and sophisticated buyers of cheese.[20]  Greenberg even admitted that Plaintiff and Lakeview's customers meet the traditional standard of a sophisticated buyer because the deals are ongoing contracts where the customers "don't move around" and "need continuity in their business."[21]  As such, Plaintiff and Lakeview's relevant consumer base is likely to exercise a high degree of care, thereby making consumer confusion unlikely and further weighing against a finding of a likelihood of confusion under the *Sleekcraft* analysis.

(4)    **Analysis of the *Sleekcraft* Factors Leads to the Conclusion that Plaintiff Has Not Established a Likelihood of Confusion**

As stated above, Plaintiff must show by a preponderance of the evidence confusion is **probable.**  *See HMH Pub. Co.*, 504 F.2d at 717 (emphasis added).  In applying the *Sleekcraft* factors to this case, the relevant and applicable factors weigh in favor of Lakeview and against a finding of a likelihood of confusion.  As stated herein, Lakeview unquestionably lacked intent to confuse or deceive consumers and Plaintiff has failed to present even a single instance of actual confusion.  Furthermore, as professional purchasers, the relevant consumer base in this case is likely to exercise a great deal of care in purchasing the relevant products and thus is unlikely to be confused by Lakeview's use of the Mark on the Defunct Webpage.  Thus, Plaintiff cannot

---

[20] Statement of Facts ¶¶ 1, 17.

[21] *See* Exhibit 1-C at 33:4-8.

establish the required element of a likelihood of confusion and therefore Plaintiff's claim for

trademark infringement under Section 43(a)(1)(A) of the Lanham Act must fail.

### d) Lakeview's Use of the Mark Constituted Fair Use and Therefore Is Non-Infringing

Plaintiff's trademark claim also fails because the Website's use of the Nelson-Ricks

Creamery Company name it is a classic example of fair use. Fair use is a defense to a charge of

trademark infringement when a defendant is using the alleged mark to describe the defendant's

goods or services, or their geographic origin, or to name the person involved in running the

business. *See KP Permanent Make-Up*, 408 F.3d at 607 (observing that the fair use defense only

comes into play after the party alleging infringement has shown by a preponderance of the

evidence that confusion is likely); McCarthy on Trademarks and Unfair Competition

("McCarthy") § 11:45 (5th ed.); *see also* 15 U.S.C. § 1115(b)(4); *KP Permanent Make-Up*, 408

F.3d at 607 (noting the Lanham Act provides a fair use defense against the infringement of a

mark to a party whose use is one other than as a mark and is used fairly and in good faith only to

describe the goods or services of such party, or their geographic origin). A junior user is always

entitled to use a mark in good faith in its primary, descriptive sense other than as a trademark.

*Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002); 15 U.S.C. § 1115(b).

Furthermore, when it is difficult, if not impossible to avoid use of the mark, such a use is not

infringing. *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350, 352 (9th Cir. 1969).

To establish a classic fair use defense, a defendant must show: (1) the defendant's use of

the mark is not as a trademark or service mark; (2) the defendant uses the term fairly and in good

faith; and (3) the defendant uses the term only to describe its goods or services. *Cairns*, 292 F.3d

at 1151; 15 U.S.C. § 1115(b).

As discussed above, the Mark was used on the Defunct Webpage merely to describe the history of the Banquet brand prior to Lakeview's acquisition of the brand. Lakeview in no way sought to profit off the use of the Mark; instead, the Defunct Webpage simply made reference to the exact name of the original company in an effort to explain the history of the Banquet brand. Thus, the Defunct Webpage's use was not as a trademark but rather in good faith to fairly describe the history of the brand. As a result, the use of the Mark therefore was not infringing under the fair use doctrine. *See* Restatement (Third) of Unfair Competition § 28 cmt. c (1995); *see also In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1467 (9th Cir. 1993).

**e)      Plaintiff Cannot Prove Any Damages Related to the Alleged Infringement**

In addition to all of the issues outlined above, Plaintiff's claim for trademark infringement must fail because Plaintiff has no evidence of damages. In bringing a claim for trademark infringement, the plaintiff must prove both the fact and the amount of damages by a preponderance of the evidence. *See Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 621 (9th Cir. 1993); *see also Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993). Actual damages are measured by any direct injury that the plaintiff proves and any lost profits the plaintiff would have earned but for the infringement. *See Lindy Pen*, 982 F.2d at 1407.

In this case, Plaintiff cannot prove even a single dollar in damages. In fact, Plaintiff cannot even state with certainty a single contract, sale, or agreement that was affected by the use of the Mark on the Defunct Webpage. Rather, Plaintiff merely makes an unsubstantiated claim for one-half of the Banquet Brand's sales:

> Q With regard to the use of that name on the website, can you describe for me any sales that you know you lost - - you lost out on because of the Banquetcheese.com/about web page that's been cited in your complaint?

14

A. Sure.

Q. To whom?

A. "…I don't know who, but I'll just make a claim that half the sales of any Banquet label product, I would have had if he wouldn't have misled people maybe."[22]

Thus, rather than offering any evidence to support the fact and amount of damages, Plaintiff instead attempts to establish damages on a wildly speculative assumption that it is entitled to one-half of the sales of all Banquet label product. Because damages cannot be established by mere assumption and speculation, Plaintiff's claim has no substance. *See Lindy Pen*, 982 F.2d at 1407. As Plaintiff cannot establish any actual damages, its claim for trademark infringement must fail.

### 3.    Plaintiff Cannot Prevail on its Second Cause of Action for Common Law Trademark Infringement

Much like its Lanham Act claim, Plaintiff's trademark infringement claim under Idaho law also fails as a matter of law. To prove trademark infringement under Idaho Code § 48-512, the plaintiff must prove the defendant's use of the mark creates a likelihood of confusion. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 841 (9th Cir. 2002). When interpreting Idaho Code § 48-501 *et seq.*, courts look to the federal system of trademark registration and protection under the trademark act of 1946. Idaho Code § 48-518; *Cohn*, 281 F. 3d at 841.

As noted above, Plaintiff did not even apply for a trademark, let alone register the Mark, until well after Lakeview removed the "About Us" link from the Website. Furthermore, Plaintiff cannot demonstrate a likelihood of consumer confusion because (1) the relevant consumers are sophisticated, professional buyers who exercise a high degree of care in making purchasing

---

[22] *See* Exhibit 1-C at 58:7-17.

15

decisions and (2) Plaintiff cannot set forth any admissible evidence of appreciable or tangible consumer confusion.[23]  Therefore, Plaintiff's claim for Common Law Trademark Infringement must fail.

    **4.**       **Plaintiff Cannot Prevail on its Fourth Cause of Action for Unfair Competition**

The analysis for a claim of trademark infringement and for unfair competition are identical. *See Brookfield*, 174 F.3d at 1048, n. 8 (reviewing trademark infringement and unfair competition claims under the same governing standard and noting that the claims can be analyzed jointly).  As discussed above, Plaintiff cannot provide evidence to support a prima facie trademark infringement claim and therefore its claim for unfair competition necessarily must fail.[24]

    **5.**       **Plaintiff Cannot Prevail on its Fifth Cause of Action for Unfair Methods and Practices**

The Idaho Consumer Protection Act (Idaho Code § 48-603) ("ICPA") protects both consumers and businesses against unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade or commerce.  Idaho Code § 48-603.  The ICPA requires that the offending party know or in the exercise of due care should know that he has in the past or is currently committing an act or practice declared unlawful by Idaho Code section 48-603. *Swafford v. Huntsman Springs, Inc.*, No. 44240, 2017 WL 6347031, at *4 (Idaho Dec. 13, 2017).

Here, Plaintiff has failed to establish any evidence supporting its claim for unfair methods and practices.  In fact, the record conclusively demonstrates that Plaintiff cannot satisfy the

---

[23] Lakeview incorporates the full *Sleekcraft* analysis set forth above in Section B(2)(c) to demonstrate why the common law trademark infringement claim must fail.

[24] Lakeview incorporates into this section its entire trademark infringement analysis in Section B(2).

ICPA's knowledge requirement. All of Lakeview's representatives and employees testified that they were unaware the Defunct Webpage was still accessible and were unaware of the content of the Defunct Webpage.[25] Lakeview's actions after receiving Plaintiff's cease and desist letter further demonstrate their lack of knowledge or intent. After receiving the letter, Lakeview immediately attempted to further disable the Defunct Page and informed Plaintiff that it had no knowledge that the Defunct Webpage was still accessible.[26]

In addition to the lack of knowledge, Plaintiff failed to specify any section of the statute which they purport Defendant violated. Even if Plaintiff alleges Defendant's use was in violation of the "catch all" provision of the statute, which prohibits "[e]ngaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer," such vague and conclusory allegations are insufficient to maintain a claim under the ICPA. *Surrell*, 518 F.3d at 1103; *see also Mussell v. Fed. Home Loan Mortg. Corp.*, No. 114CV00537EJLCWD, 2015 WL 6163440, at *5–6 (D. Idaho May 22, 2015) (dismissing claims under the ICPA finding the plaintiff's allegations too vague and conclusory); Idaho Code § 48-603(17). Therefore, as Plaintiff has failed to present even a scintilla of evidence to support its ICPA claim, Lakeview is entitled to summary judgment on Plaintiff's claim for Unfair Methods and Practices.

6.    **Plaintiff Cannot Prevail on its Sixth Cause of Action for Unjust Enrichment**

To establish a claim for unjust enrichment, the plaintiff must prove: (1) a benefit is conferred on the defendant by the plaintiff; (2) the defendant appreciates the benefit; and (3) it would be inequitable for the defendant to accept the benefit without payment of the value of the benefit. *Countrywide Home Loans, Inc. v. Sheets*, 160 Idaho 268, 272, 371 P.3d 322, 326 (2016)

---

[25] *See* Exhibit 1-A at 53:3-23; Exhibit 1-O at 25:9-17; Exhibit 1-P at 16:3-20.

[26] *See* Exhibit 1-N.

(citing *Teton Peaks Inv. Co. LLC v. Ohme*, 146 Idaho 394, 398, 195 P.3d 1207, 1211 (2008)).

"The essence of the quasi-contractual theory of unjust enrichment is that the defendant has received

a benefit which would be inequitable to retain at least without compensating the plaintiff to the

extent that retention is unjust." *Beco Const. Co. v. Bannock Paving Co.*, 118 Idaho 463, 466, 797

P.2d 863, 866 (1990).

Here, Plaintiff has failed to allege any specific benefit that has been conferred upon

Lakeview. Rather, Plaintiff merely alleges "as a result of Lakeview's trademark infringement and

unfair competition, NRCC has been damaged and Lakeview has been unjustly enriched."[27] Thus,

Plaintiff's unjust enrichment claim hinges solely on the success of Plaintiff's trademark

infringement and unfair competition claims. As discussed above, Plaintiff has failed to establish

the required elements to maintain either claim. Therefore, Plaintiff's claim for unjust enrichment

must likewise fail as a matter of law.

### 7.    Plaintiff Cannot Prevail on its Seventh Cause of Action for Tortious Interference with Prospective Economic Advantage

To establish a claim for tortious interference with a prospective economic advantage,

Plaintiff must prove: (1) the existence of a valid economic expectancy; (2) Lakeview's knowledge

of the expectancy; (3) intentional interference inducing termination of the expectancy; (4) the

interference was wrongful by some measure beyond the fact of the interference itself; and (5)

Plaintiff's resulting damage. *Mitchell Enterprises, Inc. v. Mr. Elec. Corp.*, No. CV 11-0537-REB,

2014 WL 1365903, at *11 (D. Idaho Apr. 7, 2014); *Cantwell v. City of Boise*, 146 Idaho 127, 191

P.3d 205, 216 (2008). To demonstrate intent, Plaintiff must prove the actor desires to bring about

the interference or "knows that the interference is certain or substantially certain to occur as a

---

[27] Docket No. 44 ¶ 54.

result of his action." *Id.* (quoting *Highland Enterprises, Inc. v. Barker*, 133 Idaho 330, 340, 986 P.2d 996 (1999)).

Furthermore, to establish that the intentional interference was wrongful, the plaintiff may offer proof that either "(1) the defendant had an improper objective or purpose to harm the plaintiff; or (2) the defendant used a wrongful means to cause injury to the prospective business relationship." *Wesco Autobody Supply, Inc. v. Ernest*, 149 Idaho 881, 893–94, 243 P.3d 1069, 1081–82 (2010) (quoting *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 286, 824 P.2d 841, 861 (1991)).

Here, Plaintiff cannot establish a prima facie case of tortious interference with prospective economic advantage because it cannot show any intent by Lakeview or any actual interference. When asked if Plaintiff had "any evidence of Greg Gaglio or Lakeview Cheese interfering with any agreements [Plaintiff] had with any of those 30 companies," Greenberg tellingly responded "I don't know."[28]

As such, despite Plaintiff alleging that Lakeview interfered with at least thirty different companies, Plaintiff has been unable to produce anything more than unsubstantiated speculation regarding these conclusory allegations. Such conclusory allegations, without factual support, are insufficient to defeat a motion for summary judgment. *See Surrell*, 518 F.3d at 1103.

In addition to Plaintiff's inability to identify a valid economic expectancy, Plaintiff also has failed to establish any damages caused by Lakeview. Although Plaintiff need not prove damages with any degree of mathematical certainty, damages must be proved with a "reasonable certainty." *New Phase Dev. LLC v. Cook*, No. 4:13-CV-00520-EJL, 2015 WL 4528695, at *5 (D. Idaho July 27, 2015) (citing *Trilogy Networks Sys., Inc. v. Johnson*, 144 Idaho 844, 172 P.3d 1119,

---

[28] *See* Exhibit 1-C at 65:15-22.

1121 (Idaho 2007)). Here, Plaintiff has not alleged any damages within a reasonable *possibility*, much less the required reasonable *certainty*.

Instead, as is a common theme throughout this litigation, Plaintiff bases its claims on vague and unsubstantiated speculation that Lakeview must have interfered with anyone who purchased Banquet cheese and therefore Plaintiff will "just make a claim that half the sales of any Banquet label product" were the result of interference.[29] This type of guess and conclusory allegation does not create a genuine issue of material fact sufficient to survive summary judgment. *See generally, Lexington Heights Dev., LLC v. Crandlemire*, 140 Idaho 276, 286, 92 P.3d 526, 536 (2004) (holding summary judgment is appropriate when the plaintiff fails to even attempt to explain or provide evidence as to how the defendant has interfered or how such alleged interference was wrongful). As such, Plaintiff's claim for tortious interference must fail.

**C.    CONCLUSION**

For the foregoing reasons, Lakeview respectfully requests this Court enter summary judgment in Lakeview's favor on all of Plaintiff's claims.

DATED this 31ST day of January 2018.

DICKINSON WRIGHT PLLC

ERIC D. HONE (ISB No. 5699)(*Pro Hac Vice*)
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113

RUCHTI & BECK LAW OFFICES
JAMES D. RUCHTI (ISB No. 6366)
Oakley Building
1950 E. Clark Street, Suite 200
Pocatello, Idaho 83201
*Attorneys for Defendant*

---

[29] *See* Exhibit 1-C at 58:7-11.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _3/st_ day of January 2018, I caused the foregoing to be filed electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

John M. Avondet
Jared W. Allen
Beard St. Clair
520 First American Circle
Rexburg, Idaho 83440
Email: javondet@beardstclair.com
Email: allen@beardstclair.com

*Attorneys for Plaintiff Nelson-Ricks Cheese*
*Company*

An employee of Dickinson Wright PLLC

LVEGAS 68975-7 204908v1

21