UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NELSON-RICKS CHEESE COMPANY, INC., an Idaho corporation,<br><br>Plaintiff,<br><br>v.<br><br>LAKEVIEW CHEESE COMPANY, LLC, a Nevada limited liability company,<br><br>Defendant. | Case No. 4:16-cv-00427-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Lakeview Cheese Company LLC's ("Lakeview") Motion for Summary Judgment. Dkt. 70. Lakeview has also filed a motion seeking to exclude the testimony of two of Plaintiff Nelson-Ricks Cheese Company's ("NRCC") experts from the Court's consideration in deciding the Motion for Summary Judgment. Dkt. 79. After holding oral argument on the motions, the Court took the matters under advisement. Also after oral argument, NRCC filed a Motion to Supplement the record with additional material in support of its opposition to summary judgment. Dkt. 89. Upon review, the Court now issues the following decision GRANTING the

Motion to Supplement, DENYING the Motion to Exclude, and GRANTING the Motion

for Summary Judgment.

## II. BACKGROUND

This is a trademark infringement case. The trademark at issue is the word mark

"Nelson-Ricks Creamery Company" ("the Mark"). The two parties in this case own and

operate various assets that formerly belonged to Nelson-Ricks Creamery Company

("Creamery"), a now defunct business entity.

Prior to 2012, Creamery owned facilities in Salt Lake City, Utah, and Rexburg,

Idaho. Creamery also owned certain intellectual property including both the "Banquet"

and "Nelson Ricks Creamery" brand names of cheese. In 2012, Lakeview purchased both

the Salt Lake City facility and the Banquet brand from Creamery. The sale included the

transfer of Creamery's www.banquetcheese.com website to Lakeview. Importantly, the

sale also included a limited license allowing Lakeview to make use of the Nelson Ricks

Creamery brand name. In 2014, Creamery sold the Rexburg facility and the Nelson Ricks

Creamery brand to NRCC Asset Acquisition LLC, an affiliate of NRCC.

NRCC's claims in this matter center on the "About Us" webpage from Creamery's

original www.banquetcheese.com website. The "About Us" webpage detailed

Creamery's history, story, and the historical affiliation of Nelson-Ricks Creamery

Company and the Banquet brand. In 2014, contemporaneously with Creamery's sale to

NRCC Asset Acquisition, Creamery terminated Lakeview's limited license agreement to

use the Mark. As a result, Lakeview updated Creamery's website to remove the "About Us" webpage, making it no longer accessible via www.banquetcheese.com.

Approximately one year later, in April 2015, NRCC obtained trademark registration for "Nelson-Ricks Creamery Company." One year after that, NRCC became aware that, even though the "About Us" webpage was no longer linked to the www.banquetcheese.com website, if manually typed into a web-browser, a person could still access the page, in the same form as when it was created by Creamery, and containing the trademarked "Nelson-Ricks Creamery Company" Mark. NRCC sent Lakeview a cease and desist letter demanding that the information be changed or taken down. Lakeview altered the "About Us" page and removed any reference to Nelson Ricks Creamery. Those actions aside, this lawsuit ensued. NRCC alleges six trademark related claims against Lakeview: (1) trademark infringement under the Lanham act; (2) common law trademark infringement; (3) unfair competition; (4) unfair methods and practices; (5) unjust enrichment; and (6) tortious interference with prospective economic advantage.

Lakeview now moves for summary judgment on all counts. Additionally, in evaluating summary judgment, Lakeview asks the Court to exclude from consideration the testimony of two of NRCC's experts. The Court will address each matter in turn.

During oral argument, the Court requested that the parties supplement the record with more accurate pictures of the webpages at issue (as those provided in the record were out of focus or otherwise difficult to read). The parties prepared a joint submission, which the Court now accepts. Dkt. 93.

Additionally, NRCC filed a Motion to Supplement the record, dkt. 89, in support of its opposition to summary judgement. The Court will also address this motion.

### III. LEGAL STANDARD

#### A. *Summary Judgment*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, this Court must "view[] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, this Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

### B. Exclusion of Expert Testimony

Even though this case is not at the trial stage, the extent to which experts may render an opinion is addressed under the well-known standard first enunciated in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993), and its progeny, and now set forth in Rule 702 of the Federal Rules of Evidence. *See Moore v. Deer Valley Trucking, Inc.,* No. 4:13-CV-00046-BLW, 2014 WL 4956241, at *1 (D. Idaho Oct. 2, 2014).

Rule 702 establishes several requirements for admitting an expert opinion. First, the evidence offered by the expert must assist the trier of fact either to understand the evidence or to determine a fact in issue. *Primiano v. Cook,* 598 F.3d 558, 563 (9th Cir. 2010); Fed. R. Evid. 702. "The requirement that the opinion testimony assist the trier of fact goes primarily to relevance." *Id.* (Internal quotations and citation omitted).

Additionally, the witness must be sufficiently qualified to render the opinion. *Id.* If specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, a witness qualified by knowledge, skill, experience, training or education may offer expert testimony where: (1) the opinion is based upon sufficient facts or data, (2) the opinion is the product of reliable principles and methods; and (3) the witness has applied those principles and methods reliably to the facts of the case. Fed. R. Evid. 702; *Daubert,* 509 U.S. at 592–93; *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999). The inquiry is a flexible one. *Primiano,* 598 F.3d at 564. Ultimately, a trial court must "assure that the expert testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* (internal quotation marks and citation omitted).

# IV. ANALYSIS

## A. Motion for Summary Judgment

Lakeview argues that all of NRCC's claims fail as a matter of law and because there are no disputed facts in this case. The Court will address each cause of action in turn. However, the Court will place extra emphasis on the first claim, as the analysis there is relevant to later claims.

### 1. Trademark Infringement Under the Lanham Act

In order to prevail on a claim for trademark infringement, NRCC must establish that: (1) it is the owner of a valid and protectable trademark; (2) the defendant used the mark in commerce; (3) the defendant's use of the mark is likely to cause confusion; and (4) NRCC has suffered damages. 15 U.S.C. § 1125(a); *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1081 (9th Cir. 2015) (citing *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc*., 618 F.3d 1025, 1030 (9th Cir. 2010)).

Commercial use of the mark is a jurisdictional predicate. *Bosley Med Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005). If a defendant does not use the mark in commerce, a plaintiff's claim for trademark infringement fails as a matter of law. *Id.* If commercial use is established, then the "core element of trademark infringement" is "[p]rotecting against a likelihood of confusion," which helps to "ensur[e] that owners of trademarks can benefit from the goodwill associated with their marks" and "that consumers can distinguish among competing producers." *Adobe Sys. Inc.,* 809 F.3d at

1081 (quoting *Brookfield Commc'ns v. W. Coast Entm't Corp.,* 174 F.3d 1036, 1053 (9th

Cir. 1999); *Thane Int'l, Inc. v. Trek Bicycle Corp.,* 305 F.3d 894, 901 (9th Cir. 2002)).

### *a. Owner of a Valid Trademark*

As stated previously, in 2012, when Lakeview purchased some of Creamery's

assets, it also entered into a Limited License Agreement that allowed it to use the name

"Nelson-Ricks Creamery Company." In March of 2014, when NRCC Asset Acquisition

bought Creamery's remaining assets, Creamery—in anticipation of the pending sale—

revoked this agreement with Lakeview. Lakeview immediately disconnected the "About

Us" webpage that had the Mark's language. Creamery, however, retained the right to

collect royalties from Lakeview, and the Mark did not officially become NRCC Asset

Acquisition's until an escrow period of 180 days had closed. The Mark, therefore, could

not become NRCC's until sometime after August 24, 2014. [1] On August 11, 2014, NRCC

filed its application to register the Mark with the United States Patent and Trademark

Office ("USPTO"), and on April 21, 2015, NRCC registered the Mark with the USPTO.

Lakeview contends that because NRCC did not have a valid and enforceable

trademark prior to August 24, 2014, (when NRCC Assets Acquisition actually acquired

---

[1] There is nothing in the record proving a valid assignment of assets, including the Mark, from
NRCC Asset Acquisition to NRCC, which brings into doubt NRCC's standing to bring this
lawsuit. However, the first element of a trademark infringement claim is proof of ownership of
the trademark. It appears undisputed that NRCC owns the trademark at issue.

the rights to the Nelson-Ricks Creamery Company Mark) any use by Lakeview prior to that date is irrelevant and NRCC only had a valid trademark after August 24, 2014.

NRCC asserts that it had a common law trademark prior to registration. Even assuming this is true, the earliest date NRCC could claim a common law trademark is March 24, 2014—the date of NRCC Assets Acquisition's purchase of Creamery assets. Construing all possible inferences in NRCC's favor, the period of infringement would at most be from March 24, 2014, to August 2016 (when, following NRCC's cease and desist letter, Lakeview removed all references to Nelson-Ricks Creamery Company from the "About Us" webpage).

It is not completely clear if NRCC had a valid and enforceable trademark during the time in question, but construing the facts in NRCC's favor, the Court will assume that it did. However, even assuming the Mark's validity, this is only the first step of the inquiry.

### b. Use in Commerce

The second section of the Lanham Act states that any person who "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive" can be held liable for such use. 15 U.S.C. § 1114(1)(a); *see also Bosley,* 403 F.3d at 676. Courts do not consider there to be infringement under the

Lanham Act if a website contains another's trademark if the website does not offer any product for sale or contain any paid advertisements. *Bosley,* 403 F.3d at 678.

Here, the mention of Nelson-Ricks Creamery Company on the "About Us" webpage was mostly historical in nature. The "About Us" section of the website told the story of the Banquet cheese brand and the Mark was included to describe when the company was founded and what kind of products are offered. While the website originally contained an online store link (which the Court would have interpreted as offering products for sale), Lakeview removed that function prior to NRCC's accusation and its prior existence is irrelevant to the Court's determination. Simply put, there is no indication that Lakeview used the Mark in commerce.

NRCC makes a tenuous argument in its reply brief that because the website contains information about a business, it necessarily is an advertisement and is commercial in nature. NRCC does not cite to any court that has made such a finding and this Court declines to do so now.

### c. Confusion

Although the Court does not find that Lakeview used the Mark in commerce, the Court will nonetheless address confusion, as this is the crux of any trademark claim. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769 (1992) (determining that it is "undisputed that liability under § 43(a) requires proof of the likelihood of confusion"); *Fortune Dynamic, Inc.,* 618 F.3d at 1030 (finding that "the likelihood of confusion is the core element of trademark infringement"). Additionally, in this case specifically,

confusion and damages are the two elements that weigh most heavily in favor of summary judgment, as NRCC cannot provide a single example of confusion or point to a single dollar in damages.

To establish a likelihood of confusion, a plaintiff must establish that confusion is *probable* rather than merely *possible*. *HMH Pub. Co. v. Brincat*, 504 F.2d 713, 717 (9th Cir. 1974). Both sides agree that the Court should utilize the long-recognized factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F. 2d 341 (9th Cir. 1979), to determine if a likelihood of confusion exists in this case.

In applying the *Sleekcraft* factors, a court is to consider: (1) the similarity of the marks; (2) the relatedness of the two companies' services; (3) the marketing channel used; (4) the strength of plaintiff's mark; (5) the defendant's intent in selecting its mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). The *Sleekcraft* factors are not mandatory or an exhaustive list but rather "helpful guideposts" for the Court to use. *Fortune Dynamic, Inc.,* 618 F.3d at 1030. The Court need not give the factors equal weight, or even utilize each factor, as some may not be relevant or applicable. *Marketquest Grp., Inc. v. BIC Corp.,* 862 F.3d 927, 938 (9th Cir. 2017). The purpose of a "factor" list such as this is simply to "facilitate a court's analysis, to the degree [the factors] are relevant in a given case." *Id.*

The first four factors are not as relevant to the Court because: the use in question here is not just of a similar mark, but is the use of the actual Mark itself (factor 1); the two companies services are closely related (factor 2); both use the internet as a marketing channel (factor 3); and the strength of the Mark is not in question (factor 4).[2] Additionally, because Lakeview and NRCC are already competitors in a niche market, the likelihood of expansion (factor 7) is not particularly relevant in this case. *See Brookfield*, 174 F.3d at 1060. The remaining three factors (factor 5, 6, and 8) are relevant under the circumstances, and the Court will address each in turn to determine if there was a likelihood of confusion.

### 1. Defendant's Intent

Under factor 5, a defendant's intent to deceive or mislead by using a Mark is strong evidence of a likelihood of confusion. Here, there is no indication that Lakeview intended to use the Mark *at all*, let alone for any purpose that would harm NRCC or cause confusion to the public and potential customers.

---

[2] NRCC focuses mostly on the first three factors. In an internet case, the first three factors, known as the "internet troika" or "internet trinity" are of greatest importance. *See Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.,* 559 F.3d 985, 989 (9th Cir. 2009). Here, the Court chooses not to address them in depth because Lakeview essentially agrees with NRCC on these elements. NRCC postures that because these factors are met, there is confusion; however, NRCC recognizes that such a conclusion is not automatic and the Court must consider other factors as well. Because the Court finds that the other factors weigh heavily in favor of Lakeview, there is no inconsistency in declining to decide this issue based only on the first three factors.

When Lakeview had the Limited License Agreement with Creamery following its purchase of certain Creamery assets, the website remained intact and Creamery collected a royalty from Lakeview in connection with its use of the website. When NRCC Asset Acquisition bought Creamery's remaining assets (and Lakeview's Limited License ended), Lakeview terminated the webpage containing the Nelson-Ricks Creamery Company Mark. When NRCC discovered that this webpage could still be viewed by manually typing the web address into an internet search browser—and sent Lakeview a cease and desist order—Lakeview immediately removed all references to Nelson-Ricks Creamery Company so that even if a person somehow got to that webpage, the Mark would not be there. All the evidence indicates Lakeview thought the webpage had been deleted altogether, and when NRCC brought to Lakeview's attention that this was not the case, it swiftly remedied any "infringement" that remained.

NRCC takes a completely different approach and contends that Lakeview knew about the infringement the whole time and intended to confuse people and steal NRCC customers all along. NRCC alleges that by deleting the webpage from the Banquet website, but not deleting it from its web-hosting server, Lakeview reaped the benefit of anyone who searched for "Nelson-Ricks Creamery Company", clicked on the metadata in the search queries, and was subsequently taken to the "About Us" webpage. The basis for this assertion comes from NRCC's expert witness Laura Thieme. Thieme's opinions and

testimony are the subject of Lakeview's motion to exclude, which the Court will discuss in detail below.[3]

Thieme opines that because Lakeview unlinked the page, but did not delete if from its web-hosting server, it was manipulating the system. She reasons that when a lay person searched for Nelson-Ricks Creamery Company, there was a high probability that banquetcheese.com would appear on the first page of results because that Mark ("Nelson-Ricks Creamery Company") appeared in the content of an active, although unconnected, webpage of that website (the "About Us" webpage of Banquet Cheese). So, even though that webpage was not physically linked to Lakeview's or Banquet's websites, Lakeview would still reap the benefits of any initial internet searches.

As the Court will explain below regarding the Motion to Exclude, it will not exclude Thieme's testimony because, while relevant, it does not affect the Court's decision on the Motion for Summary Judgement. The same is true for this *Sleekcraft* factor. Even taking Thieme's testimony as true, her opinion does not speak to Lakeview's intent, i.e. whether Lakeview intended to mislead or deceive the public. This issue represents a classic causation vs. correlation situation. Thieme's testimony concerns search internet optimization and internet search results from end-users. Nevertheless, her testimony does not necessary connect any actions by Lakeview to those search results.

---

[3] Simply put, Thieme is a search engine optimization ("SEO") expert who researches and diagnosis search queries and metadata to determine how, and to what degree, a company is reaching the public and if the public's searches are finding the target company.

Although internet searchers may have found Lakeview's About Us webpage, that does not mean that Lakeview was nefariously striving to make that happen.

Lakeview explains that it directed someone to remove the webpage, it was removed, and Lakeview thought that was the end of the "About Us" webpage. There is no information before the Court to disprove this explanation or show that Lakeview was trying to mislead or confuse the public. The fact that NRCC later found out the webpage was still active is not indicative of bad behavior on Lakeview's part. When alerted, Lakeview immediately took additional measures to ensure that the Nelson-Ricks Creamery Company Mark was no longer on the webpage.

Ultimately, under factor 5, there is no evidence that Lakeview had any intent to deceive or mislead the public by using the Mark. This factor weighs against a finding of confusion.

### 2. Evidence of Actual Confusion

Under factor 6, evidence of actual confusion is a strong indication that there is a likelihood of confusion, although the absence of specific examples is not dispositive. *See Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1393 (9th Cir. 1993). Furthermore, it is insufficient that confusion is merely possible under the circumstances; a plaintiff must show that it is probable that the use of the Mark is likely to lead to confusion. *HMH Pub. Co.,* 504 F.2d at 717. Here, NRCC cannot show that confusion is even possible, let alone probable. NRCC has not provided even a single example of the Mark on the defunct webpage misleading someone. NRCC claims that this is not surprising considering it

does not have a relationship with end users. This argument misses the appropriate audience for the Court's analysis as will be addressed in the next section.

While not dispositive, the fact is that NRCC has not produced a single example of anyone being confused, mislead, or deceived by Lakeview's actions. This is further indication that confusion—and therefore—trademark infringement, did not occur.

Although NRCC cannot show there was any actual confusion, it asserts that there has been "initial interest confusion" in this case. Initial interest confusion occurs when a company uses a competitor's mark to direct people to its own website. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1146 (9th Cir. 2011). This argument fails for two reasons. First, as with confusion in general, this is little more than a hypothetical as NRCC cannot provide a single example of initial interest confusion happening.[4] Second, and more importantly, the case that NRCC relies upon for this proposition makes clear that intent is relevant. *See Brookfield,* 174 F.3d at 1065 (finding that the defendant "acted *affirmatively* in placing [the trademark] in the metatags of its web site, thereby *creating* the initial interest confusion" (emphasis added)).

As discussed above, there is no evidence to support an argument that Lakeview took affirmative or purposeful actions to cause confusion. By all accounts, it was a

---

[4] As will be discussed in regards to Thieme's testimony, NRCC also cannot conclusively say that a search engine's "first page" results were because of Lakeview's use of the Mark on the About Us site, or from original content developed when Creamery owned the Mark.

mistake. Without intent or examples of initial interest confusion, the Court must dismiss this theory in support of confusion.

### 3. Purchasers Sophistication

Under factor 8, the Court looks at the degree of care likely to be exercised by purchasers. This factor looks at purchasers' sophistication in the particular industry, because a professional or wholesaler purchaser would usually not be as confused as a layperson when buying products.

Here, it is undisputed that both Lakeview and NRCC sell their products to companies such as supermarkets, restaurants, and to other wholesaler distributors, but do not sell directly to retail customers or end users.

Lakeview contends that wholesalers are sophisticated professionals who exercise a high degree of care in their business dealings and would not be confused by a Mark on a defunct website.

NRCC contends that Lakeview is applying this factor to the wrong group of purchasers. Rather than using Lakeview's (in reality, Banquet's) immediate customer base of wholesalers and retail businesses, NRCC argues the Court should look at the end user, i.e. the "ordinary people who are likely to be confused by misleading use of trademarks on the internet." Dkt. 82, at 9. NRCC's argument is flawed and inconsistent with case law on point. Although end users in a retail environment eventually purchase the product at issue here, the relevant purchasers are the wholesalers and professional buyers with whom Lakeview primarily does business. The sophistication of Lakeview's

client base weighs against confusion, as they are mostly professional retailing businesses or other wholesale distributors. "When the relevant customers are professional buyers, they are less likely to be confused by similar marks than are ordinary customers." *Moose Creek, Inc. v. Abercrombie & Fitch Co.,* 331 F. Supp. 2d 1214, 1231 (C.D. Cal.), *aff'd* 114 F. App'x 921 (9th Cir. 2004).

In sum, even assuming the internet troika is present, the other *Sleekcraft* factors weigh heavily in favor of Lakeview and a finding that its use of the Mark did not cause any confusion. First, there is no indication that Lakeview intended to use the mark at all, let alone to deceive anyone; second, NRCC has not produced a single example of confusion; and third, Lakeview's buyers are sophisticated and it is unlikely that the unauthorized use of the Mark caused them any confusion.

### d. Damages

Finally, in order to prevail on a claim for trademark infringement, a plaintiff must prove that there were damages, i.e. sales that would have occurred had it not been for the infringing conduct. *See, e.g.*, *Lindy Pen Co. v. Bic Pen Corp.,* 982 F.2d 1400, 1408 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.,* 839 F.3d 1179 (9th Cir. 2016). When seeking damages, a plaintiff must prove both that it actually incurred damages and the amount of those damages. *Intel Corp. v. Terabyte Int'l, Inc.,* 6 F.3d 614, 620–21 (9th Cir. 1993). "Damages are typically measured by any direct

injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement." *Id.*

Here, NRCC cannot prove even a single dollar in damages. All NRCC relies upon for its damages claim is its CEO, Michael Greenberg's, unsubstantiated statement that "I'll just make the claim that half the sales of any Banquet label product, I would have had if he wouldn't have mislead people maybe." Dkt. 71-3, at 14. "Just mak[ing] a claim" that "maybe" "half the sales" "would have" been NRCC's is a far cry from proving an accurate amount of damages, let alone that any even exist. NRCC has not met the standard required for damages as it has not produced any admissible evidence regarding lost sales or established that it has incurred any other damages and the amount of those damages.

In conclusion, NRCC's claim for trademark infringement fails because, even construing all facts in the light most favorable to Plaintiff concerning the validity of the Mark, the evidence shows the Mark was not used in commerce, did not cause confusion, and did not cause any damages. Summary judgment is therefore appropriate as to this claim.

### 2. Common Law Trademark Infringement

The analysis under this section is the same as above. To prove trademark infringement under Idaho Code section 48-512, the plaintiff must prove the defendant's use of a trademark creates a likelihood of confusion. *Cohn v. Petsmart,* Inc., 281 F.3d 837, 841 (9th Cir. 2002). When interpreting Idaho Code section 48-501 et seq., courts

look to the federal system of trademark registration and protection under the Trademark Act of 1946. Idaho Code § 48-518; *Cohn*, 281 F. 3d at 841.

Here, the Court has already concluded that Lakeview's use of the Mark did not cause confusion. Therefore, this claim suffers from the same fate as NRCC's trademark claim and summary judgment on this claim is appropriate.

### 3. Unfair Competition

The analysis for a claim of trademark infringement and for unfair competition are identical. *See Brookfield*, 174 F.3d at 1048 n. 8 (reviewing trademark infringement and unfair competition claims under the same governing standard and noting that the claims can be analyzed jointly). As discussed above, NRCC cannot provide evidence to support a prima facie trademark infringement claim. Therefore, its claim for unfair competition necessarily must fail. Summary judgment is appropriate on this claim.

### 4. Unfair Methods and Practices

The Idaho Consumer Protection Act ("ICPA") protects both consumers and businesses against unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade or commerce. Idaho Code § 48-603. The ICPA requires that the offending party know, or in the exercise of due care should know, that he has in the past or is currently committing an act or practice declared unlawful by Idaho Code section 48-603. *Swafford v. Huntsman Springs, Inc.,* No. 44240, 2017 WL 6347031, at *4 (Idaho Dec. 13, 2017).

Here, NRCC has failed to establish the requisite knowledge requirement. All the evidence before the Court indicates that Lakeview, and all of its representatives, were completely unaware that the unlinked, orphan webpage was still accessible. Without the requisite scienter, this claim fails. Summary judgment is therefore appropriate on this claim.

### 5. Unjust enrichment

To establish a claim for unjust enrichment under Idaho law a plaintiff must prove: (1) a benefit is conferred on the defendant by the plaintiff; (2) the defendant appreciates the benefit; and (3) it would be inequitable for the defendant to accept the benefit without payment of the value of the benefit. *Countrywide Home Loans, Inc. v. Sheets,* 371 P.3d 322, 326 (Idaho 2016) (citing *Teton Peaks Inv. Co. LLC v. Ohme,* 195 P.3d 1207, 1211 (Idaho 2008)). "The essence of the quasi-contractual theory of unjust enrichment is that the defendant has received a benefit which would be inequitable to retain at least without compensating the plaintiff to the extent that retention is unjust." *Beco Const. Co. v. Bannock Paving Co.,* 797 P.2d 863, 866 (Idaho 1990).

Here, NRCC has failed to allege any specific benefit that the unauthorized use of the Mark conferred upon Lakeview. Rather, NRCC merely alleges that, "as a result of Lakeview's trademark infringement and unfair competition, NRCC has been damaged and Lakeview has been unjustly enriched." Dkt. 44, at 9. Not only does this assertion lack sufficient basis, but by its own definition, NRCC's unjust enrichment claim hinges on the success of its trademark infringement and unfair competition claims. Because those

claims fail, NRCC's claim for unjust enrichment must likewise fail as a matter of law. Summary judgment is therefore appropriate as to this claim.

### 6. Tortious Interference with Prospective Economic Advantage

To establish a claim for tortious interference with a prospective economic advantage, a plaintiff must prove: (1) the existence of a valid economic expectancy; (2) the defendant's knowledge of the expectancy; (3) an intentional interference inducing termination of the expectancy; (4) that the interference was wrongful by some measure beyond the fact of the interference itself; and (5) plaintiff's resulting damages. *Mitchell Enterprises, Inc. v. Mr. Elec. Corp.*, No. CV 11-0537-REB, 2014 WL 1365903, at *11 (D. Idaho Apr. 7, 2014); *Cantwell v. City of Boise*, 191 P.3d 205, 216 (Idaho 2008).

Similar to the deficiencies identified with the above claims, NRCC has failed to prove interference, or even intent to interfere, by Lakeview. Additionally, NRCC cannot prove damages. When asked if NRCC had any evidence that Lakeview's actions interfered with any agreements NRCC had with its customers, NRCC CEO Michael Greenberg responded, "I don't know." Dkt. 71-3, at 16. Summary judgment is therefore appropriate on this claim as well.

### B. Motion to Exclude Witnesses

In connection with its Motion for Summary Judgment, Lakeview filed a motion asking the court to exclude two of Plaintiff's witnesses, Laura Thieme and Michael Greenburg, from its considerations regarding summary judgment. The Court will address each witness in turn.

### 1. Michael Greenberg

Michael Greenberg is the CEO of Plaintiff NRCC. Greenberg has been in the cheese industry for over 40 years and NRCC has listed him as an expert witness in this case. His expert opinions are based upon his extensive experience in the industry. Greenberg, however, is also a fact (or lay) witness who will testify concerning his business—NRCC.

In opposition to Lakeview's Motion for Summary Judgment, Greenberg submitted an affidavit regarding customer confusion and damages. NRCC has also quoted extensively from Greenberg's deposition on these two topics in support of its propositions that Lakeview's infringement created confusion and damages. Both of these are subjects that Greenberg would know extensively about as CEO of NRCC, but this testimony does not involve any expertize, beyond the fact that NRCC is his company. Lakeview seeks to exclude his opinion and testimony based upon Federal Rule of Evidence 702, claiming Greenberg does not base his expert testimony upon sufficient facts or data.

In its response to the motion, NRCC clarifies that Greenberg is not—at least with these comments at this time—acting as an expert, but that they have submitted his testimony and affidavit as simply a fact witness.

It is a well-settled concept that an individual may serve the dual role of both an expert witness and a fact witness in a case. *See U.S. v Gadson,* 763 F.3d 1189, 1212-13 (9th Cir. 2014). Here, NRCC has listed Greenberg as an expert witness, but it has also

listed him as a lay witness. The statements Greenberg has given are from his perspective as CEO of NRCC. The Court, therefore, will allow Greenberg's testimony as a fact witness on summary judgment and will not exclude his opinions.

## 2. Laura Thieme

Laura Thieme is the President and Owner of Business Research International dba Bizresearch, a boutique online search marketing agency. Thieme is also the CEO of SMI Analytics dba Bizwatch, an auditing and reporting software company. Thieme specializes in search engine optimization ("SEO"), which is a marketing discipline focused of the visibility of search engine results. In layman's terms, it is the study and application of what appears when an individual searches for something on a search engine (on Google for example), the order in which the results appear, and why.[5]

Here, Thieme's expert opinion concerns SEO and the results or likely results of a person searching for Nelson-Ricks Creamery Company. Although the Court does have some reservations about the methodology used, the margin of error, and the data criteria involved, these issues do not concern the Court as must as the applicability of Thieme's conclusions. The Court has reviewed Thieme's testimony and while some of the material is helpful and relevant as background or foundation, her opinions do not go far enough to

---

[5] By way of brief explanation, numerous factors and parameters affect SEO. Some of these factors are commonplace, such as the search criteria, specific language used, or the location of the searcher. Others factors are more technical, such as the metadata and information collected behind the scenes when a person uses the internet, which is then is taken into account in that person's future internet use to produce the most applicable results.

prove any of the elements of trademark infringement. As noted in the previous section discussing intent, Thieme's opinion concerning SEO and the results of search queries is not indicative of Lakeview's intent. Even if search prioritization was happening, NRCC has failed to show that Lakeview intended for that to happen. The opinion in this area thus does not aid the Court in its analysis.

Similarly, Thieme's claimed opinion regarding the likelihood of confusion is not truly an opinion about the likelihood of confusion, but rather an opinion about internet search data and visibility. Even assuming all of Thieme's statements are true, her opinion does not establish that there was any actual confusion or the risk of confusion. Thieme herself states that "I cannot sit here and . . . for sure [] tell you whether or not [customers are] going to be confused." Dkt. 79-3, at 5. Additionally, Thieme clarified numerous times that she was only looking at internet usage, internet searchers, and visibility. Dkt. 79-3, at 6-7, Dkt. 79-4, at 2. Importantly, these are the only metrics Thieme can quantify. Thieme can only speculate as to whether or not any of those metrics translates into a customer, let alone is indicative of customer confusion.[6]

_____

[6] Q. . . . [Y]ou don't know if any customer of Nelson-Ricks Cheese Company ever got on Google to search for Nelson-Ricks Creamery?
A. I have no proof without Analytics data. Dkt. 79-3, at 13.
* * *
Q. As far as who viewed Banquetcheese.com, you don't know if it was potential clients, customers, individuals, people who might be looking for a job? You don't know who was looking at the website; is that fair?
A. That is correct, not without the analytics data requested. Dkt. 79-3, at 1-2
(Continued)

Importantly, although Thieme testified that the improper use of the Mark could cause Lakeview to reap the benefits of higher search optimization, she is unable to distinguish what events or conduct could have caused that to occur, when, and whether results diminish over time.[7] In other words, there is a history of the Mark on the internet that predates the current dispute and any search results could be affected by that history as well. Banquet was a Creamery product before Lakeview purchased it and Nelson-Ricks Creamery Company and Banquet cheese have been closely associated for years prior to Lakeview's acquisition and subsequent "infringement." When asked if it was possible to segregate the impact of Lakeview's actions from prior internet use and association between Creamery and Banquet, Thieme said that she did not have the ability to do that. So even though Lakeview, or the Banquet brand, shows up on the first page of results when a person searches for Nelson-Ricks Creamery Company, that might not be the result of Lakeview's use of the Mark at all, but years of prior association between the two companies and brands. Frankly, the reason for Lakeview's priority in internet search results is an unknown.

---

* * *

Q. And [Plaintiff] never said we have customers who we believe were confused, you could go interview them directly to see if they were confused?
A. That is correct. I was looking at Internet data.
Q. Without regard to how sales may or may not occur; correct?
A. That is not my focus. Dkt. 79-3, at 3.

[7] *See generally* Dkt. 79-3, at 10-12.

Thieme's ultimate opinion is that there is the potential for confusion based upon her analysis of visibility. Importantly, the latter is not necessarily a direct result of the former and mere speculation is insufficient to support an expert opinion. *Pierson v. Ford Motor Co.,* 445 F. App'x 966, 968 (9th Cir. 2011) (finding that "an expert's opinions and conclusions which are based on nothing more than speculation cannot constitute substantial evidence"); *see also Daubert,* 509 U.S. at 590 (noting that expert testimony based on mere "subjective belief or unsupported speculation" is inadmissible).

In sum, the Court does not necessarily find that the basis for Thieme's opinions is suspect, but that the results are of little consequence to the Motion for Summary Judgment. Therefore, at this time, the Court will not exclude the testimony of Thieme.

### C.  Motion to Supplement

Several weeks following the hearing on the Motion for Summary Judgment, NRCC filed a Motion to Supplement. In its motion, NRCC seeks leave of the Court to add additional material to the record in support of its argument against summary judgment. For its part, Lakeview does not oppose NRCC's motion. Lakeview does, however, contend that the additional material does little to help NRCC's position, raises no genuine issues of material fact, and that summary judgment is still appropriate in its (Lakeview's) favor. Under the circumstances, the Court agrees.

The substance of NRCC's motion to supplement is a recently discovered link on Lakeview's webpage to a PDF document. This PDF document appears to be a product

information sheet[8] that lists the various Banquet brand cheese products and their

dimensions: height, weight, and length—by the case and by the pallet. There are

accompanying pictures of the various products. These pictures, however, are the old

Banquet Cheese packages; thus, in very fine print at the bottom of some of the packages

is the name "Nelson Ricks Creamery Company." NRCC claims that this is further

evidence of Lakeview's infringement.[9]

The parties put forth ancillary arguments concerning the Pack Size Sheet, but the

bottom line is that none of the additional information raises a genuine issue of material

fact regarding trademark infringement. As discussed at length above, while NRCC does

has a valid mark—the first component of a trademark infringement claim—NRCC has

failed to prove (2) that Lakeview used the mark in commerce; (3) that Lakeview's use of

the mark is likely to cause confusion; and (4) that it (NRCC) suffered damages. 15 U.S.C.

§ 1125(a). The addition of the Pack Size Sheet does not change this analysis. The Court

will not go through all the factors of each of the elements again, but will summarize the

_____

[8] Lakeview refers to this document as a "Pack Size Sheet" which is the title the Court will also utilize.

[9] NRCC also uses the phrase "bad faith" in its briefing to some extent, although this appears to be little more than a descriptive phrase. NRCC does not lay out the elements of a "bad faith" claim, or request a particular remedy (other than supplementing the record). Because neither side fully briefed this issue, the Court declines to entertain an argument regarding bad faith on Lakeview's part. More importantly, Lakeview's CEO has filed a sworn affidavit explaining that until the filing of the instant motion, Lakeview was unaware of the old picture's use on the Pack Size Sheet, and that once brought to its attention, Lakeview immediately removed the PDF document and link.

three key components just mentioned and how the Pack Size Sheet does not rise to the level of creating any material fact or support the denial of Lakeview's Motion for Summary Judgment.

First, in regard to use in commerce: just as the Court found the "About Us" page was not used in commerce, so too, the PDF Pack Size Sheet was not used in commerce. While a buyer might utilize this sheet to understand the size of products that he or she purchased (or intends to purchase), the Pack Size Sheet itself—and Lakeview's website for that matter—does not contain commercial links, paid advertising, or a way to purchase cheese. The mark here was not used in commerce.

Second, addressing confusion, the Court's analysis concerning the "About Us" page is on point here as well. Looking again at the key factors of intent, actual confusion, and buyer sophistication—specifically in regards to the Pack Size Sheet—there is no indication that Lakeview intended to use the mark at all, let alone to deceive anyone;[10] NRCC has not produced a single example of customer confusion as a result of the Pack Size Sheet;[11] and Lakeview's buyers are sophisticated so it is unlikely that the

_____

[10] As noted in footnote 9, Lakeview was completely unaware of the use of the Mark in this fashion and immediately removed the offending Pack Size Sheet when NRCC filed this Motion.

[11] Arguably, no discovery relative to this Pack Size Sheet has been conducted as it was only recently discovered; however, the fact that during the pendency of this litigation the attorneys and experts (i.e. those who have a vested interest and are examining things closely) did not catch this "infringement" in the Pack Size Sheet PDF is a strong indication that it had no bearing on customers or business in general.

unauthorized use of the Mark on this Pack Size Sheet in very small print caused any of them confusion.

Finally, NRCC does not discuss damages in reference to the recently discovered Pack Size Sheet. Presumably this is because NRCC has not had time to investigate whether damages occurred because of this webpage, but that is of little consequence here. NRCC's only evidence in support of damages up to this point was its CEO's *opinion* that it had sustained damages. There is no indication that knowledge of the Pack Size Sheet would have changed that statement; and, as already noted, that singular statement is insufficient to support an award of damages—regardless of what it is based upon.

In short, the Pack Size Sheet does not alter the Court's conclusion regarding infringement. Whether the "About Us" webpage is the subject of the analysis or the Pack Size Sheet—or both—neither can be the basis for a valid infringement claim. Looking at the totality of the circumstances, included the supplemental material, the Court does not find that Lakeview infringed on NRCC's Mark. The other claims likewise fail as outlined above.

## V. CONCLUSION

Summary judgment is appropriate on NRCC's trademark claims because there is no indication that Lakeview used the Mark in commerce, and NRCC cannot produce any evidence of confusion (the linchpin of any trademark case), or damages. Even if NRCC had a valid and enforceable trademark, without these crucial elements, the Court cannot

find as a matter of law, or on the facts, that Lakeview infringed upon NRCC's Mark. All of NRCC's other claims fail for similar reasons.

The Court will not exclude the testimony of Michael Greenberg because in these circumstances he is testifying as a lay witness and not an expert. Likewise, the Court will not exclude Thieme's testimony as outlined above.

The Court will allow NRCC's supplemental material to be added to the record.

## VI. ORDER

**IT IS ORDERED:**

1. Lakeview's Motion for Summary Judgment (Dkt. 70) is **GRANTED.**

2. Lakeview's Motion to Exclude Testimony of Laura Thieme and Michael Greenberg (Dkt. 79) is **DENIED.**

3. NRCC's Motion to Supplement (Dkt. 89) is **GRANTED.**

4. The Court will enter a separate Judgment in accordance with Fed. R. Civ. P. 58.

DATED: July 12, 2018

David C. Nye
U.S. District Court Judge