UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NELSON-RICKS CHEESE COMPANY, INC., an Idaho corporation,<br><br>Plaintiff,<br><br>v.<br><br>LAKEVIEW CHEESE COMPANY, LLC, a Nevada limited liability company,<br><br>Defendant. | Case No. 4:16-cv-00427-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Lakeview Cheese Company LLC's ("Lakeview") Motion for Attorney's Fees Pursuant to Award of Judgment. Dkt. 96. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court finds good cause to GRANT the Motion.

## II. BACKGROUND

On January 31, 2018, Lakeview filed a Motion for Summary Judgment on Nelson-Ricks Cheese Company, LLC's ("NRCC") claims of trademark infringement. On July 12,

2018, the Court issued a Decision granting Lakeview's Motion. Dkt. 94. The same day, the Court entered Judgment in favor of Lakeview. Dkt. 95.

In its Decision, the Court found that Lakeview's unintentional use of NRCC's word mark "Nelson-Ricks Creamery Company" ("the Mark") located on an unlinked and inaccessible webpage did not constitute trademark infringement.

In making this determination, the Court noted that while it was true that the Mark appeared on Lakeview's webpage (and as was later discovered, in a picture on a packing sheet) it was not used in commerce, did not cause any confusion in the marketplace, and did not result in any damages. Simply put, NRCC did not meet any of the required elements to establish a valid trademark claim.

Following the Court's decision and judgment in favor of Lakeview, Lakeview moved for its attorney fees in defending this action. Dkt. 96. NRCC opposes Lakeview's Motion.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 54 governs the award of attorneys' fees and provides as follows:

> (A) *Claim to Be by Motion.* A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.
> (B) *Timing and Contents of the Motion.* Unless a statute or a court order provides otherwise, the motion must:
> (i) be filed no later than 14 days after the entry of judgment;
> (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
> (iii) state the amount sought or provide a fair estimate of it; and
> (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

MEMORANDUM DECISION AND ORDER - 2

Fed. R. Civ. P. 54(d)(2). After determining that a basis exists for a proper award of attorney fees, the Court must calculate a reasonable fee award. *Hensley v. Eckerhart*, 461 U.S. 424, (1983). Generally, the Court utilizes the "lodestar figure," which multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id*. The Court can then adjust the lodestar figure if necessary, based upon the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir.1975), that have not been subsumed in the lodestar calculation. *See Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 982 (9th Cir. 2008).

### IV. ANALYSIS

In this case, Lakeview asserts that the Court can properly award attorney's fees under the Lanham Act and Idaho Code § 12-121. Although the framework and analysis are similar under both provisions, the Court will address each in turn.

  A. Lanham Act

Under the Lanham Act, the Court may "in exceptional cases . . . award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).

The United States Supreme Court has defined an "exceptional case" worthy of attorney fees as follows:

> [A]n "exceptional" case is simply one that *stands out from others with respect to the substantive strength of a party's litigating position* (considering both the governing law and the facts of the case) or *the unreasonable manner in which the case was litigated.* District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances. As in the comparable context of the Copyright Act, "'[t]here is no precise rule or

formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'"

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, (2014) (internal citations omitted) (emphasis added).

First, there can be little doubt that this case stands out with respect to NRCC's legal position. While it is true that the Mark appeared on a website[1] connected with Lakeview—a company that no longer had a right to use the Mark—the history of what lead to this lawsuit is extremely relevant.

Prior to 2012, Nelson-Ricks Creamery Company ("Creamery"), a now defunct business entity, owned facilities in Salt Lake City, Utah, and Rexburg, Idaho. Creamery also owned certain intellectual property including both the "Banquet" and "Nelson Ricks Creamery" brand names of cheese. In 2012, Lakeview purchased both the Salt Lake City facility and the Banquet brand from Creamery. The sale included the transfer of Creamery's www.banquetcheese.com website to Lakeview. Importantly, the sale also included a limited license allowing Lakeview to make use of the Nelson Ricks Creamery

---

[1] As both parties are well aware, after the Court held oral argument on Lakeview's Motion for Summary Judgment, NRCC discovered another link on Lakeview's website to a PDF product information sheet. This information sheet includes pictures of Banquet Cheese products. The pictures, however, are of older Banquet Cheese products; thus, in very fine print at the bottom of the packages is the Mark "Nelson-Ricks Creamery Company." While the Court analyzed this new evidence in support of infringement, it likewise found that NRCC had not met its burden. Accordingly, when the Court uses the word "webpage" throughout this decision, it is not only talking about the "About Us" webpage, but also the information sheet. That being said, as this evidence was added extremely late in the litigation with no discovery or time for either party to fully investigate it, the Court will not emphasize it for any particular reason. The litigation focused solely on the "About Us" webpage.

brand name. In 2014, Creamery sold the Rexburg facility and the Nelson Ricks Creamery brand to NRCC Asset Acquisition LLC, an affiliate of NRCC.

In 2014, contemporaneously with Creamery's sale of the Nelson Ricks Creamery brand to NRCC Asset Acquisition, Creamery terminated Lakeview's limited license agreement to use the Mark. As a result of this termination, Lakeview updated Creamery's website to remove the "About Us" webpage, making it no longer accessible via www.banquetcheese.com.

Approximately one year later, in April 2015, NRCC obtained trademark registration for "Nelson-Ricks Creamery Company." Approximately one year after that, NRCC became aware that, even though the "About Us" webpage was no longer linked to the www.banquetcheese.com website, if the web address was manually typed into a web-browser, a person could still access the page—in the same form as when it was created by Creamery—and containing the trademarked "Nelson-Ricks Creamery Company" Mark. NRCC sent Lakeview a cease and desist letter demanding that the information be changed or taken down. *Immediately upon receipt of the letter,* Lakeview altered the "About Us" page and removed any reference to Nelson Ricks Creamery Company and the Mark.

While it is uncontested that the Mark appeared on a webpage owned by a company that did not have rights to use the Mark, that webpage was unlinked and inaccessible

unless manually (letter by letter) typed into a search browser.[2] Additionally, when alerted to the oversight, Lakeview immediately removed the offending material from the webpage so that even if accessed, the Mark would not appear. These actions should have ended the issue. Instead, NRCC filed the instant action.

The Court recognizes that, arguably, there is an *extremely remote possibility*[3] that Lakeview's inadvertent error resulted in some detriment to NRCC and needed to be looked into further. However, early non-legal exploration would have revealed that this was not the case. Even to this day, NRCC has not provided a single example of customer confusion, nor can it point to even a single dollar in damages.

A federal lawsuit is an extreme and formal remedy and NRCC's actions here are classic "making a mountain out of molehill" behavior. The output in time and expense in litigation far outweighs any detriment NRCC suffered—which turned out to be zero. These facts weigh heavily in favor of an award of attorney fees. *See e.g., Amusement Art, LLC v. Life is Beautiful, LLC*, 2017 WL 2259672, at *4 (C.D. Cal. May 23, 2017)

---

[2] In this day and age, it is difficult to imagine anyone would manually type a URL into a web browser when trying to access information of this type—a specific webpage on a website—instead of using imbedded links. Furthermore, with no actual links or references on Lakeview's website, a person would have to know or guess the actual address in order to land on the orphaned "About Us" website.

[3] It is pure speculation to claim that a website that was difficult to access and which contained the history of a prior company would have any bearing on a customer's choice in products or confuse them—specifically where the customers in this niche market are known to each other and highly sophisticated in this business. It is extremely unlikely that anyone accessed this page, let alone was confused by it.

MEMORANDUM DECISION AND ORDER - 6

(awarding attorney fees to prevailing party when "almost no evidence" was presented to create a triable issue under the Lanham Act).

Second, while the Court has, to date, specifically avoided certain contentions raised by Lakeview related to NRCC's behavior as they had little bearing on the merits of the case, those assertions now become more relevant when the Court considers "the unreasonable manner in which this case was litigated." *Octane Fitness*, 572 U.S. at 554.

Prior to the instant suit, NRCC's CEO sent inflammatory text messages to a former employee in which he talks about lawsuits he has won and that he is good at "run[ning] up the other side's legal bills." Dkt. 66-3. Less than one week later, the instant suit was filed. For its part, NRCC denies that those messages have anything to do with this lawsuit. While that may or may not be the case, this behavior lends itself—with the more concrete examples that will follow—to the conclusion that NRCC did not litigate this case in a reasonable manner.

The background of what has become known as the subpoena debacle are well known to all parties and the Court will not rehash it here. Suffice it to say, while subpoenas are a tool in a litigator's toolbelt, NRCC's issuance of subpoenas to *non-parties* that requested they produce *proprietary information* to one of their *competitors*—and all done without following the stipulated provisions of the protective order in this case—was highly inappropriate. Ultimately, the Court quashed the subpoenas and sanctioned NRCC for engaging in such improper discovery tactics.

Finally, the behavior of NRCC's CEO—a fact witness, disclosed expert, and a key player in this lawsuit—at his deposition is further evidence of the inappropriate way this

MEMORANDUM DECISION AND ORDER - 7

case was litigated. At his deposition, Michael Greenberg refused to answer questions about customer confusion, lost profits, and other key elements of a valid trademark claim. Eventually, he terminated the deposition and stormed out of the room. If Greenberg did not want to answer questions to support the action he filed, he should not have filed it.

These examples are persuasive to the Court and demonstrate NRCC's improper and unreasonable approach to this litigation.

In sum, under the Lanham Act, this case is exceptional, and stands out because NRCC did not have a colorable claim to begin with and it pursued this litigation in an unreasonable manner. For all of these reasons, the Court will award Lakeview its reasonable costs and fees.

B. Idaho Code § 12-121

NRCC asserted five claims against Lakeview under Idaho law. While the Court summarily rejected each claim in its summary judgment analysis, certain provisions of the Idaho Code still apply.

Under the Idaho Code's attorney fee statutes, the Court "may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." Idaho Code § 12-121. Although attorney fees under section 12-121 are not awarded as a matter of right, it is not a complicated inquiry. Ultimately, if the court, "in its discretion, is left with the abiding belief that [a] case was brought, pursued, or defended frivolously, unreasonably, or without foundation," then the court should award attorneys' fees. *Michalk v. Michalk*, 220 P.3d 580, 591 (2009). While the Court has just discussed some

MEMORANDUM DECISION AND ORDER - 8

of the "unreasonable" aspects of how NRCC litigated this case, ultimately, it is the sheer lack of evidence that weighs against NRCC.

NRCC repeatedly reminds the Court that simply because it lost at summary judgment does not automatically mean that NRCC's case was frivolous or without merit, but just that its arguments were unsuccessful. NRCC is correct. A party's loss at summary judgment alone does not mandate fees; however, NRCC's arguments against summary judgment were unsuccessful because they lacked any support whatsoever.[4]

A claim for trademark infringement is a very technical claim involving multiple elements. *See Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1081 (9th Cir. 2015). Of the four required trademark elements necessary to prove infringement, NRCC was only able to prove the first—that it was the owner of a valid trademark.[5] There was no evidence to support the three remaining elements:(1) use in commerce, (2) confusion, and (3) damages. The sheer lack of evidence in support of any colorable claim—not just

---

[4] In its briefing, NRCC continues to argue—as does Lakeview to a smaller degree in its reply brief—the merits of the case and whether the elements of infringement have been met. The Court will not address these issues as it has already determined (in a detailed 30-page decision) that Lakeview did not infringe NRCC's mark.

[5] Even then, as the Court noted in its Decision, it is not entirely clear that NRCC *even had a valid trademark during the time period in question*. Dkt. 94, at 7-8. Construing the facts in NRCC's favor, however, the Court ultimately assumed that the Mark was valid and addressed the remaining elements.

MEMORANDUM DECISION AND ORDER - 9

unsuccessful arguments at summary judgment—is the reason NRCC should not have pursued this case.

In accordance with the Court's analysis under the Lanham Act, the Court likewise finds Lakeview is entitled to reasonable attorney's fees under Idaho Code § 12-121 because NRCC's "pursued [its case] without foundation." *Michalk*, 220 P.3d at 591.

C. Amount of Fees

After determining that a basis exists for a proper award of attorney fees, the Court must calculate a reasonable fee award. *Hensley*, 461 U.S. 424. In this case, Lakeview seeks $293,532.41 in costs and fees.

In response to this Motion, NRCC has raised three objections: First, that attorney Eric Hone is not entitled to $475 per hour; second, that the total number of hours claimed is excessive and redundant; and third, that there are errors in Lakeview's invoices.

1. Hone's hourly rate

At the outset, it is important to note that during the pendency of this litigation Lakeview has retained multiple attorneys. The billing rates differ between those attorneys. That being said, this Court has already found that Holland and Hart's rates are acceptable. *See* Dkt. 87, at 5-6. Furthermore, NRCC does not object to any attorney's rate besides Hone's. While the Court will specifically address Hone's rate below, it has also reviewed the various rates of all the other attorneys and paralegals in this case and finds each appropriate.

NRCC's sole objection here is to Lakeview's current lead counsel Eric Hone's rate of $475/hr. NRCC claims that $475 is excessive for the area and must be reduced. The Court disagrees.

First, while $475/hr is Hone's *current rate in Nevada*, he has only billed $425/hr (when at Dickinson Wright) and $435/hr (when at H1 law group) during the pendency of this litigation.

The Court calculates a reasonable hourly rate based upon the "prevailing market rates in the relevant community . . . which typically is the community in which the District Court sits." *Schwarz v. Secretary of Health and Human Services*, 73 F.3d 895, 906 (9th Cir. 1995). While $435/hr might be at the high end of a reasonable rate in eastern Idaho, it is not a shock. Furthermore, the Court has already found that $435/hr was an acceptable rate for Teague Donahey—another attorney in this case—who has approximately 5 years *less* experience than Hone. In short, $435/hr is not excessive considering Hone's experience, the work involved in this case, and what the Court has already determined are appropriate rates.

Finally, while the proportional award for Hone's work does account for a substantial amount of money (approximately $47,250.34), this only represents about 16% of the overall fees sought.[6] To reduce costs, Hone wrote off certain costs and utilized

---

[6] Thus, even if the Court were to force Hone to take on the rates of some of the attorneys suggested by NRCC (John Avondet for example at $275/hr), that would only reduce Lakeview's overall award by roughly $15,000. The Court is not implying this is an insignificant amount of

associates at a substantially reduced rate to keep costs down. The Court has reviewed all of the billing statements in this case and the work that Hone performed was necessary and appropriate for a senior partner.

    2. Number of Hours/Redundancy

Along that vein, NRCC next contends that the number of hours of work performed was excessive and redundant. This argument seems to rest on the premise that although Lakeview changed firms during litigation and its new attorneys had to get up to speed, it (NRCC) should not have to bear those costs because Lakeview could have "elected to stay with Holland & Hart" and could have "avoided" those charges. The Court finds this argument unpersuasive.

First, the Court will not punish Lakeview for its choice in attorneys, nor choosing to switch law firms during litigation. NRCC does not cite to anything to support the proposition that the Court should withhold fees from a law firm that was not the original firm in the case. Furthermore, it is well settled that "[a] lawyer . . . needs to get up to speed with the research previously performed. All this is duplication, of course, but it's *necessary* duplication; it is inherent in the process of litigating over time." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (emphasis in original).

---

money, but the fact is that other attorneys—*charging the same rates* now challenged by NRCC—did more work that Hone during this case (for example Teague Donahey's billings in this case exceed $93,000) and those rates have already been approved by the Court. The Court will not alter Hone's fee just because he does not reside in Boise—as prior counsel did.

Second—and somewhat ironically—Dickinson Wright (the new law firm whose charges are at issue in this objection) did not charge Lakeview for over 30 hours of work and wrote off an additional $5,000 in fees *related to their coming into this case* as a courtesy to Lakeview. *See* Dkt. 96-2, at 89-96 ("no charge" entries). Through these actions, Dickinson Wright saved Lakeview (and now NRCC) about $12,000-$18,000 in fees. Thus, the fees actually charged as a result of new counsel are more than appropriate.

Finally, NRCC makes passing reference to the number of attorneys that worked on this case and/or various motions and that such a tactic was unnecessary. The Court is not in a position to penalize a law firm's choice of how to divide work amongst attorneys, but presumably could—if there were clear instances where attorneys were doing unnecessary work at the client's expense—reduce a fee award accordingly. However, the Court finds no such situation present in the instant case.

The Court has completed a thorough review of all records submitted and finds no redundancies, duplications, or excessive hours billed as a result of Lakeview changing law firms, or among attorneys within the firm and their portions of work performed.

3. Errors

Finally, NRCC claims that Lakeview seeks, in error, fees related to motions it (Lakeview) filed that were ultimately unsuccessful.[7] Also NRCC claims that Lakeview's invoices cannot be adequately reviewed as there are redactions within the time entries thus requiring the Court to "guess[] the what and why of the work performed."

---

[7] NRCC also objects to fees incurred from the filing of stipulated matters.

MEMORANDUM DECISION AND ORDER - 13

First, NRCC does not cite any authority for the proposition that charges associated with motions dismissed or overruled must be excluded from an award of attorney fees. This is not a request for fees for a single motion or issue, but a request for fees in favor of judgment. The Court has already determined that in this case fees are appropriate as a whole. The Court will not—nor is it required to—undertake an analysis of individual motions, stipulations, or legal strategies and theories to determine if the fees incurred therein are recoverable. Again, had there been frivolous filings or improper tactics used, the Court could elect not to grant fees associated with such, but, as the Court has noted multiple times: it has carefully reviewed all invoices submitted by Lakeview and finds no such entries. The Court awards Lakeview its reasonable fees incurred in this litigation in whatever form they took.[8]

In relation to the redactions within Lakeview's submissions, the Court will note that this is customary in a request for attorney fees and the Court is well equipped to parse though the records to verify the work done. In fact, Lakeview's Counsel's entries—particularly H1 law group's—are more detailed than many invoices this Court has had the opportunity to review.

---

[8] Furthermore, an award of attorney's fees is appropriate if a party's actions were "reasonably calculated to advance [its] interest." *See Gluck v. Am. Protec. Industries, Inc.*, 619 F.2d 30, 33 (9th Cir. 1980). Without going into detail on each challenged motion or action taken by Lakeview, the Court simply notes that all of Lakeview's actions furthered its interest and the fees associated with those actions are recoverable.

Finally, while not raised by NRCC, the Court will not award certain fees as requested because they relate to the pending Ninth Circuit appeal of the Court's Decision and Judgment. In its supplemental material, Lakeview lists four entries that specifically reference work done for the appeal in this case.[9] Although two are discounted at 100%,[10] two others are billed at Hone's hourly rate.[11] Additionally, there is a fifth entry that, because of redactions, the Court cannot tell if it is related to this case or the Ninth Circuit appeal.[12] In an abundance of caution, the Court will strike this entry as well. In short, these three entries total $1,261.50. Lakeview's award will be reduced accordingly. Lakeview is free to try and recover these fees, but this is not the proper forum. Fees incurred for work done on appeal should be presented to the Ninth Circuit for consideration.

Finally, NRCC has not objected to any of the other costs sought by Lakeview, which include travel costs, printing/mailing, and research fees. The Court has reviewed all costs and finds them appropriate and recoverable.

## V. CONCLUSION

Upon review, the Court finds that NRCC unreasonably pursued this case without foundation and in an unreasonable manner. As a result, the Court awards Lakeview its

---

[9] The four entries in question are Eric Hone's 7/27, 8/3, 8/6 and 8/28 entries.
[10] The 7/27 and 8/6 entries.
[11] The 8/3 and 8/28 entries.
[12] Hone's 8/17 entry was made after NRCC had filed its appeal, but while this motion for attorney fees was still pending.

reasonable attorney fees and costs under Federal Rule of Civil Procedure 54, specifically the Lanham Act and Idaho Code section 12-121.

Considering the Court's previous award (*see* Dkt. 87), and the entries related to appellate work which the Court will not award, the Court awards Lakeview $292,270.91 in fees and costs in this action.

## VI. ORDER

**IT IS ORDERED:**

1. Lakeview's Motion for Attorney Fees (Dkt. 96) is **GRANTED.**

2. Lakeview's Motion to Supplement (Dkt. 108)[13] is **GRANTED.**

3. The Court hereby awards Lakeview $292,270.91.

4. NRCC has 30 days to comply with this order.

DATED: November 27, 2018

David C. Nye
U.S. District Court Judge

---

[13] In reviewing Lakeview's Motion for Attorney Fees, the Court noticed that Lakeview failed to provide an updated final amount (as it said it would) that reflected all work done—specifically fees incurred for final work done on the instant Motion for Attorney Fees. The Court requested that Lakeview file a supplement with documentation. Dkt. 107. Lakeview did so. Dkt 108. As the Court requested the information, Lakeview need not have filed the information in the form of a Motion, but since it elected to do so, the Court grants the same.

MEMORANDUM DECISION AND ORDER - 16